**METAL PROCESSING COMPANY, INC., Plaintiff,**

v.

**AMOCO OIL CO., Defendant.**

**No. 95–C–1056.**

United States District Court, E.D. Wisconsin.

May 21, 1997.

Russell M. Lein, Lynn M. Mueller, Hale & Lein, Milwaukee, WI, for plaintiff.

Jennifer A. Pflug, Gonzalez, Saggio, Birdsall and Harlan, Milwaukee, WI, Dennis M. Grzezinski, Grzezinski Law Office, Milwaukee, WI, for defendant.

### DECISION AND ORDER

GORDON, Senior District Judge.

Metal Processing Company, Inc. brought the above-captioned action on October 18, 1995, pursuing claims against Amoco Oil Company under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ["CERCLA"], 42 U.S.C. § 9601–9675 and the Resource Conservation and Recovery Act ["RCRA"], 42 U.S.C. § 6972 *et seq.* The trial in this case is scheduled to commence on June 9, 1997.

In 1967, Metal Processing purchased from Amoco property located at 32nd Street and Auer Avenue in Milwaukee. The plaintiff now seeks to recover from Amoco the costs the plaintiff has incurred in responding to hazardous substances found on the property, pursuant to 42 U.S.C. § 9607, and also to receive contribution for the future response costs that the plaintiff has yet to incur, pursuant to 42 U.S.C. § 9613. Furthermore, Metal Processing asks that Amoco be held liable, under 42 U.S.C. § 6972, as a past generator and owner of a facility that contributed to the disposal of waste that presents an imminent and substantial endangerment to health or the environment. There are several pending motions before the court.

### I. Defendant's Motion to Strike Plaintiff's Demand for a Jury Trial

In both its complaint and its amended complaint, Metal Processing demanded a jury trial. Amoco now moves to strike that demand, arguing that Metal Processing has no right to a jury trial in an environmental recovery case, which, the defendant argues, is essentially equitable in nature.

The Seventh Amendment to the United States Constitution provides that the right to a jury trial shall be preserved in suits at common law. The Supreme Court of the United States has interpreted the amendment to guarantee a jury trial in actions that are analogous to cases that, prior to the enactment of the Seventh Amendment in 1791, would have been brought in courts of law, rather than courts of equity or admiralty:

> To determine whether a statutory action is more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty, the court must examine both the nature of the action and of the remedy sought. First we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.... Second, we examine the remedy sought and determine whether it is legal or equitable in nature.

*Tull v. United States*, 481 U.S. 412, 417–18, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987); *see also In re Air Crash Disaster Near Roselawn, Ind.*, 96 F.3d 932, 943 (7th Cir. 1996) ("To discern whether the amendment applies, we pose what is called the 'historical' test: was the cause of action, or at least an analogous action, tried at law at the time of the Founding?").

Very few courts have had an opportunity to decide whether there exists a right to a jury trial under 42 U.S.C. §§ 9607 & 9613 (CERCLA) and 42 U.S.C. § 6972 (RCRA), but the courts that have resolved the issue

have almost uniformly found that there is no such right. The court of appeals for the third circuit, in a case relied upon by Amoco, used historical analysis when it found that there is no right to a jury trial under CERCLA. *Hatco Corp. v. W.R. Grace & Co.-Conn.*, 59 F.3d 400 (3d Cir.1995). The *Hatco* court first found that the plaintiff's claim under 42 U.S.C. § 9607, which allows for the recovery of past expenses from previous owners or operators of a facility, was one for restitution. The court said that restitution is "based on substantive liability having its origins in unjust enrichment or the restoration to a party in kind of his lost property or its proceeds." *Hatco*, 59 F.3d at 412. The court commented that no appellate court had decided that a right to a jury trial exists for contribution claims arising under 42 U.S.C. § 9613 and, after finding nothing in the legislative history allowing a right to a jury and after engaging in a historical analysis, concluded that contribution was an equitable remedy. *Hatco*, 59 F.3d at 412–13.

Similarly, the court of appeals for the eighth circuit held that when the federal government was seeking recovery of its response costs pursuant CERCLA or of its abatement costs under RCRA, the government was "in effect seeking equitable relief in the form of restitution or reimbursement of the costs it expended in order to respond to the health and environmental danger presented by hazardous substances," and that there was no right to a jury trial. *United States v. Northeastern Pharm. & Chem. Co.*, 810 F.2d 726, 749 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987).

A federal district court, when recently analyzing whether the parties were entitled to a jury on a claim for contribution under 42 U.S.C. § 9613, analogized the contribution claim to a claim for recovery of response costs under § 9607. *American Cyanamid Co. v. King Industries, Inc.*, 814 F.Supp. 209, 213–14 (D.R.I.1993). Finding that courts have "uniformly held" that there is no right to a jury trial in § 9607 actions, the district court said:

> The underlying issues to be tried are whether the defendants are liable for re-

sponse costs . . ., and to what extent, if any they are liable for their share of those costs to the plaintiffs. Logically, plaintiffs' right to recovery derives directly from the state and federal government's equitable right to hold defendants liable for response costs and to seek restitution. These issues of response cost liability and apportionment of restitutionary relief are equitable in nature, and do not entitle defendants to a trial by jury.

*American Cyanamid*, 814 F.Supp. at 214.

My research shows that only one court within our judicial circuit has addressed the issue. Citing the "numerous cases" that support the preposition that recovery of response costs under CERCLA is "equitable in nature as a consequence of which there is no entitlement to a jury," the district court for the southern district of Indiana found "no reason to deviate from the line of authority," and struck the plaintiff's demand for a jury trial for its § 9607 claim. *GL Indus. of Michigan v. Forstmann–Little*, 800 F.Supp. 695, 698–99 (S.D.Ind.1991). Several other federal district courts have reached the same result. *See Dublin Scarboro Improvement Assn. v. Harford County*, 678 F.Supp. 129, 132 (D.Md.1988) (finding no right to jury trial under CERCLA, 42 U.S.C. § 9607 and under RCRA, 42 U.S.C. § 6972); *Wehner v. Syntex Corp.*, 682 F.Supp. 39, 40 (N.D.Cal. 1987); *United States v. Mottolo*, 605 F.Supp. 898, 912–13 (D.N.H.1985); *United States v. Wade*, 653 F.Supp. 11, 13 (E.D.Pa.1984).

In its response, Metal Processing concedes that there does not appear to be a right to a jury trial on either its § 9607 CERCLA claim or its RCRA claim. In its brief, the plaintiff argues that the issue is "the more narrow question of whether a jury trial is available in an action for contribution brought under 42 U.S.C. § 9613 such as Metal Processing has brought here as one of its causes of action." Metal Processing relies on one unpublished case in support of its contention that it is entitled to a jury trial for its contribution claim against Amoco. That unpublished decision, however, *United States v. Shaner*, 1992 WL 154618 (E.D.Pa.1992), was decided before *Hatco* by a court sitting with-

in the circuit that decided *Hatco.* It therefore carries little, if any, weight.

The court of appeals for the seventh circuit has not decided whether a right to a jury trial applies to either 42 U.S.C. § 9607, 42 U.S.C. § 9613, or 42 U.S.C. § 6972. It has, however, noted that when restitution is an equitable remedy, no right to a trial by jury exists, *United States v. Fountain,* 768 F.2d 790, 801 (7th Cir.), *modified,* 777 F.2d 345 (1985), *cert. denied,* 475 U.S. 1124, 106 S.Ct. 1647, 90 L.Ed.2d 191 (1986), and that restitution for the disgorgement of unjust enrichment is an equitable remedy with no right to a jury trial. *Roberts v. Sears, Roebuck & Co.,* 617 F.2d 460, 465 (7th Cir.), *cert. denied,* 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980); *see also Maryland Cas. Co. v. Armco, Inc.,* 822 F.2d 1348, 1352–54 (4th Cir. 1987) (interpreting the recovery provision of CERCLA to be in the form of equitable and remedial relief), *cert. denied,* 484 U.S. 1008, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988). The court of appeals for the seventh circuit has also said that contribution is an equitable remedy. *Aetna Cas. & Sur. Co. v. Chicago Ins. Co.,* 994 F.2d 1254, 1257 (7th Cir.1993) ("Subrogation is an equitable remedy, like contribution, whereby one who fulfills an obligation on behalf of another stands in the other's place with respect to the claim."); *American Underwriters, Inc. v. Auto–Owners Mutual Ins. Co.,* 719 F.2d 900, 902 (7th Cir.1983) ("The concept of pro rata contribution rests upon equitable and public policy considerations"); *see also Dartron Corp. v. Uniroyal Chem. Co.,* 917 F.Supp. 1173, 1184–85 (N.D.Ohio 1996) (outlining the equitable factors that are involved in determining contribution under 42 U.S.C. § 9313 and stating that the "amount of each party's 'fair share' pursuant to contribution liability is for the Court to decide as a matter of fact").

 I agree with the precedent described above and believe that it applies to this case. Because Amoco is a former owner and operator of the property at issue, Metal Processing believes that it should not have to pay the full response costs associated with the hazardous substances that have allegedly been found on the property. The essence of this argument is that Amoco, if it were not held liable as a former owner and operator under 42 U.S.C. § 9607, would be unjustly enriched by not having to pay the costs that Metal Processing has incurred. This is an equitable argument that should be heard by the court. Furthermore, the contribution section of CERCLA expressly states that "[i]n resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). The same reasoning holds true for the plaintiff's attempt, under RCRA, 42 U.S.C. § 6972, to seek recovery of abatement costs it will incur.

I will therefore grant the defendant's motion to strike the plaintiff's demand for a jury trial, and this entire action will be heard by the court.

## II. Motions to Preclude Expert Testimony

Amoco also moves to preclude the testimony of the four expert witnesses that Metal Processing has named because, according to the defendant, the plaintiff has not timely provided the expert reports as required under Local Rule 7.07. The local rule states that, unless the court designates a different time, the parties shall provide a written report at least 90 days before trial is to commence. The report must be "prepared and signed by the witness" and the report shall include:

> a statement of all opinions to be expressed and the basis and reasons therefore; the data or other information relied upon in forming such opinions; any exhibits to be used as a summary of or support for such opinions; the qualifications of the witness; and a listing of any other cases in which the witness has testified as an expert at trial or in deposition within the preceding four years.

Except for the time requirement, Local Rule 7.07 is substantially similar to Rule 26(a)(2)(B), Federal Rules of Civil Procedure. Rule 37(c), Federal Rules of Civil Procedure, states that a party that fails to disclose information required by Rule 26(a) shall not be allowed to use as evidence any witness or

information not so disclosed, unless such failure is harmless.

Amoco's motion, which was filed on April 21, 1997, argues that because Metal Processing failed to produce complete expert reports, it should not be allowed to use these experts at trial. Amoco claims that if the court allows these witnesses to testify, it will suffer substantial prejudice because it cannot conduct proper depositions of these experts or prepare rebuttal testimony. In its response, Metal Processing points out that the scheduling order entered by this court on October 2, 1996 required the parties to exchange the names of *all* of their witnesses by April 7, 1997. The plaintiff maintains that the court's scheduling order altered the date that the expert reports had to be provided. Because the court asked that the names be revealed 63 days before trial, the plaintiff contends that the court order would be "unintelligible if the court also intended that the parties comply with Rule 7.07(d) requiring formal expert reports 90 days prior to trial." The plaintiff states that it named all four of its expert witnesses on April 7, 1997 and that "Metal Processing has also provided Amoco with detailed test results and preliminary reports prepared by its experts which more than adequately apprise Amoco of the nature of their testimony."

Despite the filing of the defendant's motion on April 21, the plaintiff did not provide a joint report of two of its named experts until May 12, 1997, one week after the discovery deadline. There has been no suggestion, and the court has no evidence, that Metal Processing has provided reports for its other two experts.

■ Nothing in the scheduling order purports to supplant the detailed directions of Local Rule 7.07 and Rule 26(a). Requiring the names of the expert witnesses to be included with the general fact witnesses is not inconsistent with the requirement that complete expert reports be provided 90 days before trial. Nevertheless, I believe there was some basis for the plaintiff's being confused by this court's scheduling order and its relation to Local Rule 7.07 and Federal Rule 26(a). Accordingly, I will allow the plaintiff to introduce the testimony of Thomas C. Sweet and Jeffrey M. Larkin, the two experts whose report has been provided.

■ "The sanction of exclusion under Rule 37(c)(1) is 'automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless.'" *Mid–America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir.1996) (quoting *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir.1996)). The court does, however, have discretion in deciding whether a party's violation of the expert report rule is harmless or justified. *Mid–America Tablewares*, 100 F.3d at 1363. To avoid any prejudice to the defendant, I will extend the discovery deadline until Thursday, June 5, 1997 for the purpose of enabling the defendant, if it elects to do so, to depose Mr. Sweet and Mr. Larkin. Therefore, because I believe that this procedure will reduce, if not eradicate, prejudice to the defendant, I decline to exclude the testimony of the two experts whose report has been supplied to the defendant.

On May 16, 1997, Metal Processing also filed a motion asking the court to preclude the defendant from calling expert witnesses other than Gene Schmidt. The plaintiff states that "Amoco has provided Metal Processing with no additional names of expert witnesses it intends to call and has provided Metal Processing with no information any additional expert witnesses it intends to call." Metal Processing then continues: "Amoco may, of course, not intend to call any additional expert witnesses. In any case, it should not be allowed to do so." My interpretation of this motion is that it is a preventative strike intended to prevent Amoco from surprising the plaintiff with any more expert witnesses. There is no indication in the defendant's witness lists, however, that it plans to produce any experts other than Mr. Schmidt. Therefore, I will address such a motion only when there appears to be a genuine issue. I will accordingly dismiss the plaintiff's motion as moot.

### III. Defendant's Motion in Limine

Amoco has also brought a motion in limine that asks the court to preclude the plaintiff from presenting evidence on any of its

CERCLA or RCRA claims. This request is based upon the plaintiff's failure timely to provide its response to the defendant's requests for admission. Pursuant to Rule 36, Federal Rules of Civil Procedure, a party may ask the opposing party to respond to requests for admission. The matter is deemed admitted unless the party upon whom it was served denies or objects to the request within 30 days. Metal Processing, however, did not respond to the defendant's request for admissions until 35 days after it had received the requests.

The defendant bases the first part of its motion on the plaintiff's admission, or more specifically, admission by default, that Amoco did not use, store, or possess chlorinated hydrocarbon compounds on the property. The defendant contends that because CERCLA excludes petroleum products from the definition of hazardous substances, Amoco can only be liable for the release of non-petroleum contaminants, "specifically chlorinated hydrocarbon compounds." The plaintiff's admission, according to the defendant, precludes the plaintiff from pursuing its CERCLA claim.

Amoco bases the second part of its motion on the plaintiff's admission by default that the response costs incurred since the filing of this case and the costs that will be incurred in the future were or will be "because of the presence of chlorinated hydrocarbon compounds on the property." The defendant argues that because RCRA does not provide a remedy for past cleanup costs and because the plaintiff admitted by default that the costs that have been or will be incurred after the filing of this case are only related to chlorinated hydrocarbon compounds, the defendant cannot be held liable under RCRA.

■ In response to Amoco's motion, Metal Processing has filed a motion to withdraw its admissions. The plaintiff correctly states that under Rule 36(b), the court may permit withdrawal of an admission "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." I agree with the plaintiff's conclusion that if the defendant's motion in limine were granted, the plaintiff would effectively be precluded from presenting the merits of this action. Furthermore, it is difficult to imagine that the defendant has relied upon the plaintiff's admissions by default, since the plaintiff did deny the requests five days after they were due, Amoco would therefore be not prejudiced by the withdrawal of these admissions. Thus, I will deny the defendant's motion in limine and grant the plaintiff's motion to withdraw its admissions by default to the defendant's requests for admissions number one, two, three, and four, dated April 4, 1997.

Therefore, IT IS ORDERED that the defendant's motion to strike the plaintiff's demand for a jury trial be and hereby is granted.

IT IS ALSO ORDERED that the defendant's motion to preclude the plaintiff from providing the testimony of expert witnesses be and hereby is denied.

IT IS FURTHER ORDERED that the deadline for the defendant's deposition examination of Mr. Larkin and Mr. Sweet be and hereby is extended until Thursday, June 5, 1997.

IT IS FURTHER ORDERED that that plaintiff's motion to preclude the defendant from providing the testimony of expert witnesses other than Mr. Gene Schmidt be and hereby is dismissed as moot.

IT IS FURTHER ORDERED that the defendant's motion in limine to preclude the plaintiff from producing evidence on its CERCLA and RCRA claims be and hereby is dismissed.

IT IS FURTHER ORDERED that the plaintiff's motion for leave to withdraw its admissions to the defendant's requests for admissions number one, two, three, and four, dated April 4, 1997, be and hereby is granted.

IT IS FURTHER ORDERED that each party shall bear its own costs in connection with these motions.