Lennie Ann MAREK, Thomas L. Mapes, Plaintiffs,

v.

Bobby MOORE, Defendant.

Civil Action No. 95–2294–GTV.

United States District Court, D. Kansas.

Feb. 10, 1997.

As Corrected March 5, 1997, Nunc Pro Tunc.

Craig E. Cole, Garnett, KS and William J. Pauzauskie, Topeka, KS, for Plaintiffs.

Donald A. Frigon, Frigon Law Firm, Dodge City, KS, Deborah Purce–Jones, Jones & Jones; Michael George, Kansas Department of SRS, and Helen J. Pedigo, Kansas Department of SRS, Children & Family Services, Topeka, KS, for Defendants.

*MEMORANDUM AND ORDER*

RUSHFELT, United States Magistrate Judge.

The Court has before it a Motion to Strike Plaintiffs' Expert Witness Maynard L. Brazeal (doc. 78). As grounds for the motion defendant suggests that Mr. Brazeal neither prepared nor signed his written report, as required by Fed.R.Civ.P. 26(a)(2). Plaintiffs dispute this factually and oppose the motion. Because defendant seeks to strike the designation of the expert witness, the court considers the motion as one for sanctions, pursuant to Fed.R.Civ.P. 37(c).

The development of the report of Mr. Brazeal illustrates a recurring question as to the correlative roles of counsel and the expert witness in preparing a report. Fed.R.Civ.P. 26(a)(2)(B) contains a general requirement that the disclosure of a specially retained expert "be accompanied by a written report prepared and signed by the witness." In this case plaintiffs concede that, "Brazeal did prepare the subject reports *with the assistance of counsel.*" Plaintiff's Reply to Defendants Motion to Strike Testimony of Maynard Brazeal at 3 (doc. 83) (underscoring added).

The parties and the testimony and affidavit of the expert reveal the following facts: Mr. Brazeal prepared and submitted to the attorney for plaintiffs a report dated September 3, 1996. It set forth his expert opinions, as required by Rule 26(a)(2). Later that day Mr. Brazeal and the attorney discussed the report by telephone. During that discussion the witness authorized a number of changes to his report. Anticipating the deadline of September 6, 1996, for the disclosure, counsel for plaintiffs then caused the report to be retyped by his own staff, ostensibly on the letterhead of the witness. Counsel then sent to the defense attorney this unsigned revision, also dated September 3, 1996. It incorporated the changes authorized by the expert.

Defendant discovered these facts at the deposition of Mr. Brazeal on December 13, 1996. The witness had signed neither his original nor the revised report. He specifically inquired whether he should sign the original, after defense counsel discovered it in the material Brazeal had brought to the deposition. Defense counsel replied no. The witness testified he had prepared the original version, but not the revision. Defense counsel then elected to terminate the deposition and file the present motion. By affidavit Brazeal has stated, "On December 13, 1996, I was willing to sign both (reports), and in fact started to sign (the original) during the deposition." The original does bear the beginning of his signature.

The motion raises this question: Should the designation of Maynard L. Brazeal as expert witness be stricken upon the grounds that his report, as submitted to defendant, was neither prepared nor signed by him, as required by Fed.R.Civ.P. 26(a)(2)(B)? The rule itself does not provide an answer. Defendant has provided the court with no authority whatsoever in support of the motion.

Rule 37(c) governs the question before the court:

(1) A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions....

■ The court will first address the absence of a signature to the report. To determine whether the designation of the expert should be stricken, as defendant requests, the court finds the deficiency harmless within the meaning of Rule 37(c)(1). Defendant obviously proceeded to deposition upon the assumption the witness was subscribing to the content of the report, even though it was unsigned. This assumption has proved to be accurate. Mr. Brazeal has vouched for the content of the revised report as his own, notwithstanding it was typed in the offices of counsel after their phone conversation. The witness has agreed to sign both versions. He states he was ready to do so at his deposition on December 13. Plaintiffs can readily cure the deficiency. The court will

order them to do so. It will also order sanctions, as hereinafter described, for failure to have it timely signed. Absent some prejudice to defendant, which has not been shown and which the court does not find, it declines to impose the extreme sanction of striking the designation for lack of signature.

The more difficult question relates to the two versions of the report, the second of which was prepared with the assistance of counsel and timely provided to defendant, albeit without signature. Does the involvement of the attorney in its preparation preclude it from qualifying as a report "prepared ... by the witness," within the meaning of Rule 26(a)(2)(B), and particularly when the witness has testified he himself did not "prepare" it. In determining this question, the court has compared the two versions of the report. A number of the differences are simply grammatical or stylistic: the insertion and deletion of commas, quotation marks, or a preposition; the addition of the first name of the decedent; and inclusion of a professional title of the witness under a space for his signature. These changes do not alter the substance of the report.

Other changes require closer scrutiny: The second version of the report includes additional description of material reviewed by the expert, such as "voluminous portions of the discovery record," depositions of three identified persons, personnel files, and "numerous exhibits." The first version expresses the opinion that defendant applied a choke hold and excessive weight to the decedent. The second version revises the opinion to state defendant applied either or both. The first version states that anyone trained in unarmed defense should recognize when someone is unconscious from lack of oxygen. The second version adds the duty to recognize when someone "is not resisting force in a manner to cause imminent harm." The first version says that the conduct of Moore "may have" led to the physical confrontation in question. The second says his conduct "probably" led to it. The first version expresses the concern of the expert if the testimonies of "some of the witnesses" are accurate. The second conditions his concern upon the testimonies of "the students and/or McGinnis."

These differences aside, the two versions of the report are substantively alike. The second expresses the same final opinion as the first, with the addition of two commas: "In my opinion, Bobby Moore's response was based more upon emotion, rather than sound tactics with grievous results." The first paragraph in each version itemizes the material reviewed by the expert. The second and third paragraphs contain no differences of consequence. The remaining paragraphs contain the changes herein mentioned. The substance of the expert opinions and conclusions, as well as their underlying bases and reasons, remain in the second version of the report essentially the same as in the first. The court finds no difference of such consequence as to nullify the character of the report as one prepared in substance by the expert witness. Nor has defendant pointed out any such difference. The court assumes, moreover, that the expert himself viewed the changes as inconsequential and not in conflict; because his affidavit states his willingness to sign both versions of the report.

The court must determine, however, the effect to be given the testimony at deposition that the witness himself did not "prepare" the revision. Given the circumstances already described, the court construes his answer to refer simply to the fact that the witness and his staff did not type or re-type the revision, notwithstanding his authorization of the changes. This construction accords with the remainder of the testimony and affidavit of Mr. Maynard L. Brazeal. The court cannot reasonably construe his negation to mean that he was disavowing the content of the revised report, when all else shows he had specifically authorized the changes to be his own revision. Nor could one reasonably impute to the witness an intent to deny his preparation within the meaning of Rule 26(a)(2)(B).

The 1993 amendments to Rule 26 added to the provision for identifying an expert witness the requirement of a written report prepared and signed by him or her. The advisory committee notes suggest that this change should promote disclosures of the

substance of expert testimony in detail, rather than by the more sketchy and vague information often provided in answers to interrogatories. Defendant has offered no rationale or authority, however, for striking the designation of an expert witness who has been assisted by counsel in preparing the report. The advisory committee notes to Rule 26 indeed contemplate the possibility of such assistance:

> Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, with experts such as automobile mechanics, this assistance may be needed. Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness.

Trial counsel may well have legitimate cause to give some assistance to an expert witness in the preparation of the report. Rule 26(a)(2)(B) sets exacting requirements for its content: It shall contain a "complete" statement of "all opinions to be expressed." It shall contain "the basis and reasons" for those opinions. It shall include the "data or other information" considered by the witness and any supporting exhibits. A litigating attorney knows that, upon objection or request by opposing counsel, the Court could well exclude expert testimony which has not been adequately disclosed, pursuant to these requirements. Rule 37(c) indeed would authorize such exclusion, if a report were incomplete.

Unlike the attorney, the expert witness more likely preoccupies himself with his profession or field of expertise. He may have little appreciation or none whatsoever for Rule 26 and its exacting requirements for a legally "complete" report of the expert opinions, including all the "data or other information" and designating all supporting exhibits. In this case, for example, the revised report of Mr. Brazeal describes material he purportedly reviewed but did not mention initially. If the expert, responding to an inquiry by counsel, says he did review other materials, should their addition to the report taint and disqualify it? Or if, as here, the expert upon

inquiry from counsel agrees that he would be accurate and truthful in saying that the culpable conduct of a party "probably" led to an injury, and not merely that it "may have" done so, should the revised opinion be completely discarded because of their intervening discussion? Probability and possibility refer to concepts which may be consistent, not mutually exclusive. Yet at trial the failure to prove probability may defeat the admissibility of an expert opinion. Experience teaches that these kinds of changes in expression and choice of words can and do occur even at trial. Rule 26(e)(1) specifically refers to subsection (a)(2)(B), moreover, reflecting the necessity of supplementation to provide "additional or corrective information" to the report of an expert witness.

The following authority suggests the value of assistance by counsel in preparation of the report of an expert witness:

> Failure to disclose the information required in an expert's report fully and fairly may support an objection at trial to some or all of the expert's testimony.... To help ensure complete disclosure of the required information, counsel ordinarily should supervise preparation of the expert's written report. Such assistance is permitted, though the report should be written in a manner that reflects the testimony to be given by the expert witness and must be signed by the expert....

William W. Schwarzer, et al., Civil Discovery and Mandatory Disclosure: A Guide to Efficient Practice § 1[B][3] (2nd ed. 1994).

Litigation continually proceeds with assumptions that any witness, expert or otherwise, may have made different and sometimes inconsistent statements about relevant matters. The inconsistencies often relate to inconsequential details. They may also relate, of course, to material matters. Inconsistencies occur for various reasons. Memories dim. People make mistakes in recall. They sometimes speak carelessly, impulsively, and with little thought or discretion about their choice of language. They choose words which inadequately or inaccurately express what they mean to say. Trial courts often instruct juries, in weighing the credibility of witnesses, to consider whether their inconsis-

tent statements relate to matters of material importance or of lesser consequence and whether they reflect either honest mistake on the one hand or an intent to deceive on the other.

■ The court generally would not disqualify a witness upon grounds he has changed his testimony after talking with an attorney. It would instead give opposing counsel the opportunity to cross-examine the witness. Effective cross-examination serves to expose inconsistencies of importance. It may also develop the extent to which a witness has been influenced by counsel to make changes in what he says. Similarly here. That a report of the expert has been revised, after a conference with the attorney, should not lead the court to hastily strike the designation of the witness. Defendant should instead find his recourse by cross-examination of the expert.

In this case the court does not know to what extent, if any, the foregoing hypothetical examples accurately reflect the discussion between Mr. Brazeal and counsel for plaintiffs on September 3, 1996. The court finds nothing, on the other hand, to suggest some supervening domination over the witness by counsel or some improper conduct by either of them to support an argument that the report is not that of the witness. In his affidavit the expert specifically states he authorized the changes made in the report.

■ As the moving party, defendant bears the burden to show valid grounds for striking the designation of the expert witness. Contrary to his suggestion, the court does not find that the report submitted to defense counsel in September 1996 fails to qualify under Rule 26(a)(2)(B) as one prepared by the expert witness. Mr. Brazeal expressly adopts it as his own. The court finds no sufficient difference between the original and later versions of the report that should disqualify it as one prepared in substance by the witness. That the typing of the second report was done by the staff of the attorney, rather than by the witness, does not change this fact.

■ Notwithstanding its findings in this instance, the court also emphasizes that in no way does it suggest that attorneys have license to change the opinions and reports of expert witnesses. Any changes in the preparation of a report must be what the expert himself has freely authorized and adopted as his own and not merely for appeasement or because of intimidation or some undue influence by the party or counsel who has retained him. Absent some showing to the contrary, however, the court will assume that an attorney ethically abides by his responsibility as its officer and that a witness, expert or otherwise, will abide by his oath to tell the truth.

■ Although declining to strike the designation of the expert witness, the court does find that a sanction is appropriate. Plaintiff provided defendant with an unsigned report. The lack of signature, although not fatal in this instance, understandably contributed to the surprise and response of defense counsel at the deposition of December 13, 1996. The transcript indicates the willingness of the witness to sign the original. It does not show at what point, however, his willingness to sign the revision was communicated to defendant. Plaintiffs had furnished defendant only with the unsigned revision. The attorney for plaintiffs might have avoided this unfortunate imbroglio simply by doing what he should have done earlier in the interval of three months before the deposition, i.e. provide defendant with a *signed* report as the Rule requires.

As an appropriate sanction, pursuant to Rule 37(c), the court finds that counsel for plaintiff should pay or reimburse defendant for the costs of the aborted deposition on December 13, 1996. This shall include reasonable amounts for the court reporter and transcript and any costs for the preparation and attendance of Maynard L. Brazeal at his deposition on that date. Plaintiffs shall also furnish defendant forthwith with a signed copy of the revised report of Maynard L. Brazeal, which they provided unsigned in September. Upon receipt of the signed report, defendant may resume the deposition of Mr. Brazeal as an expert witness. Plaintiffs shall be responsible for securing the attendance of Mr. Brazeal for the resumed deposi-

tion at the offices of their attorney in Tope-ka, Kansas.

For all the foregoing reasons the court sustains in part and overrules in part the Motion to Strike Plaintiffs' Expert Witness Maynard L. Brazeal (doc. 78). It orders sanctions as herein set forth. It otherwise overrules the motion.

IT IS SO ORDERED.